IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL FLOURNOY, M32025, | ) ) ) ) | |
| *Petitioner,* | ) ) | No. 19 C 50067 |
| v. | ) ) | Judge Virginia M. Kendall |
| UNITED STATES, | ) ) | |
| *Respondent.* | ) ) ) | |

# ORDER

On August 7, 2012, a grand jury indicted Michael Flournoy for conspiracy to possess cocaine with the intent to distribute and for attempt to possess six kilograms of cocaine with the intent to distribute, in violation of 21 U.S.C 846. *U.S. v. Sanabria-Sanchez et al.*, No. 12-cr-50044-3 (N.D. Ill.), Dkt. 24. Flournoy entered a plea of not guilty to each count and proceeded to trial. *Id.*, Dkt. 27. The jury found Flournoy guilty of both counts and he was sentenced to serve 204 months in prison and five years of supervised release. *Id.*, Dkt. 102, 217.

On appeal, the Seventh Circuit Court of Appeals affirmed his conviction but remanded the case for resentencing because the district court did not explain the discretionary conditions of supervised release. *U.S. v. Flournoy*, 842 F.3d 524, 531 (7th Cir. 2016). The district court resentenced Flournoy to 160 months in prison, far below the original sentence, and elucidated the conditions of his supervised release. *Sanabria-Sanchez*, Dkt. 327. Flournoy appealed the sentence, arguing that the district court improperly limited the scope of remand. *United States v. Flournoy*, 714 Fed. Appx. 587, 588-90 (7th Cir. 2018). Flournoy also maintained his innocence and argued that he played a minor role in the conspiracy. *Id.* The Seventh Circuit affirmed his conviction and his sentence. *Id.* Flournoy has now filed a Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255, (Dkt. 1), a Motion to Compel Disclosure of Exculpatory Evidence, (Dkt. 4), a Motion to Produce and Compel the Existence of Any Wire Communication, (Dkt. 5), and a Motion to Disqualify the AUSA and to Move the Cause to the Eastern Division of the Northern District of Illinois, (Dkts. 7, 11.) Flournoy has also filed a Motion for Summary Judgment (Dkt. 12), however, the Court construes this as a response to his § 2255

Motion because Summary Judgment is not appropriate at this stage. *United States v. McIntosh*, 373 F.App'x 597, 599 (7th Cir. 2010) (it is the substance of the filing, not the caption, that controls how the Court shall treat the request).

Flournoy's convictions were based upon his involvement in attempting to distribute cocaine. The evidence at trial showed that in July 2012, Flournoy met with Jose Luis Sanabria-Sanchez and discussed where he could buy cocaine. *Sanabria-Sanchez*, Tr. 367, 371. Jose introduced Flournoy to his brother, Cesar Sanabria-Sanchez, to assist in finding a cocaine supplier. *Id.*, Tr. 366-67. Cesar told Flournoy that he had met someone that could sell them cocaine. *Id.*, Tr. 367-68. Cesar then informed Jose that the supplier was ready, who then told Flournoy. *Id.*, Tr.373-74. Before purchasing the cocaine, Flournoy, Cesar, and Jose met at Cesar's apartment to wrap bundles of cash, which was then put in the trunk of Flournoy's vehicle. *Id.*, Tr. 374-376.

On July 20, 2012, Winnebago County Sheriff's Department Detective Bob Juanez, who was acting undercover, began discussing a drug deal with Cesar. *Id.*, Tr. 273, 279. On July 27, 2012, Juarez and Cesar met and discussed Cesar selling marijuana to Juanez and Juanez selling cocaine to Cesar. *Id.*, Tr. 288-298. Several recorded telephone calls later, Cesar agreed to buy six kilograms of cocaine from Detective Juanez. *Id.*, Tr. 290-97. Detective Juanez believed Cesar was going to bring 500 pounds of marijuana to sell to him. *Id.*, Tr. 324. Flournoy, Jose, Cesar, and Cesar's girlfriend met with Juanez to purchase the cocaine in Rockford, Illinois. *Id.*, Tr. 298-99, 377. Juanez was accompanied by detective Yaira Barrios who was posing as Juanez's wife. *Id.*, Tr. 300, 344. Flournoy gave Juanez $180,200 of cash and began walking back to his vehicle. *Id.*, Tr. 306, 348, 427. At this point, law enforcement officers arrested Flournoy, Jose, and Cesar. *Id.*, Tr. 306, 349-50, 428.

In his motion for relief under § 2255, Flournoy argues that: 1) the prosecution failed to disclose favorable evidence; 2) he is actually innocent; and 3) his appellate counsel was constitutionally ineffective. (Dkt. 1 at 5.) For reasons discussed below, the Court denies Flournoy's Motion for Relief under § 2255, his Motion to Compel, (Dkt. 4), his Motion to Produce, (Dkt. 5), and his Motion to Disqualify the AUSA and to Move the Cause to the Eastern Division of the Northern District of Illinois, (Dkts. 7, 11.) Flournoy never raised any of these arguments on direct appeal.

## **STANDARD**

Section 2255 allows federal prisoners in custody to move the court which imposed the sentence to vacate, set aside, or correct the sentence. *See* 28 U.S.C. § 2255. To obtain relief under § 2255, he must show that the district court sentenced him "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28

U.S.C. § 2255A. A § 2255 motion seeks "an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Relief under § 2255 is appropriate only to correct an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice. *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004); 28 U.S.C. § 2255.

## I.  Motion for Relief under § 2255

### A.  Petitioner Cannot Show Suppression of Favorable Evidence

Flournoy first argues that he is entitled to relief under § 2255 because the "government suppressed evidence of dismissal; start of investigation reports which detailed start of case, established a buy/sale relationship and independency of co-defendants." (Dkt. 1 at 4). Flournoy says he requested these documents from the government and his request was denied. *Id.* Flournoy had an obligation to raise this issue on direct appeal, but he failed to do so. As a result, this claim is procedurally defaulted. *Bousely v. United States*, 523 U.S. 614, 621 (1998). Because he failed to raise this issue on direct appeal, he must show cause and prejudice in order for this Court to review the claim. *Dretke v. Haley*, 541 U.S. 386, 388 (2004).

Flournoy attempts to show cause by claiming that his counsel was ineffective because he was in a better position to litigate the issue of the knowing use of perjury and the suppression of evidence. (Dkt.1 at 4). The problem with Flournoy's claim, however, is that there is no statement of what "non-frivolous" litigation he believed his counsel should have made for him and based on what discovery. He alleges that he did not appeal the motion to suppress, the motion for a new trial, or argue "Brady; Giglio; Variance; Constructive Amendment; or the use of False evidence." (*Id.*). Nowhere in his petition, however, does he explain what supposedly new information he learned that was not available to him before and which now changes the outcome of his case. He alleges that the government "caused documents to be created by state officer after state case was dismissed, suppressed evidence of dismissal, and failed to provide him with co-defendants change of plea hearings. (*Id.*). Yet, he fails to identify that information or why his attorney should have done something with it. Even if he could show cause, he has failed to show how this unexplained evidence caused him prejudice.

In the interest of completeness, the Court will address Flournoy's concerns as if he had not defaulted them. *Brady* holds that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been

different." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985). *Strickler* states there are three components to a true *Brady* violation: 1) the evidence must be favorable to the accused; 2) that evidence must have been suppressed by the State; 3) prejudice must have ensued. 527 U.S. at 281-82. The defendant has the burden of establishing a *Brady* violation but cannot show a violation based on mere speculation or unsupported assertions that the government suppressed evidence. *U.S. v. Jumah*, 599 F.3d 799, 808-09 (7th Cir. 2010); *see also U.S. v. Andrus*, 775 F.2d 825, 843 (7th Cir. 1985).

Flournoy's *Brady* claims fail for several reasons. First, Flournoy does not establish which evidence, in particular, could have assisted his case. He only generally states that the government suppressed evidence of dismissal, State-created investigation reports that established a buy/sale relationship and independency of co-defendants, and transcripts of his co-defendants change of plea hearings. (Dkt. 1 at 4). Unsupported assertions and mere speculation are not sufficient to show a *Brady* violation. *Jumah*, 599 at 808-09. Second, Flournoy does not show that the allegedly suppressed evidence is material such that it would have had an effect of the outcome of his proceeding. Due to the ample evidence against him at trial, it is unlikely any initial investigation report or transcript of change of plea hearings would have had any result. Third, Flournoy cannot show that the Government suppressed the evidence and only makes conclusory statements that they did so. In any event, the Government shows that the change of plea transcripts were available to Flournoy, as was the evidence of dismissal. (Dkt. 9 at 11, 12). As Flournoy cannot meet his burden of establishing that the evidence was material and favorable, nor that it was suppressed, he has failed to plead a *Brady* violation. 527 U.S. at 281-82

**B. Flournoy Cannot Show Ineffective Assistance of Counsel**

Thomas Patton, a federal defender, represented Flournoy during his appeal to the Seventh Circuit. *United States v. Flournoy*, 842 F.3d 524, 531 (7th Cir. 2016). Flournoy refused counsel for the remand in district court, (*Sanabria-Sanchez* Dkts. 297, 298) and during the second appeal. *United States v. Flournoy*, 714 Fed. Appx. 587, 588-90 (7th Cir. 2018). Flournoy argues that his federal defender's representation and performance during the first appeal was constitutionally deficient for several reasons. Flournoy states his counsel was ineffective because Patton was allegedly aware of the suppressed documentation and failed to appeal this. (Dkt. 1 at 5). Flournoy further claims that counsel was ineffective because counsel failed to appeal all errors in the district court, including the government's misconduct in knowingly suborning perjury at trial and failing to produce transcripts of his codefendant's plea proceedings in advance of his motion to dismiss. (Dkt. 12 at 11). In support of his claims, Flournoy points to the Attorney Response to Notice of Waiver of Counsel for his first appeal, which describes Flournoy's dissatisfaction with Thomas Patton. (Dkt. 12-1 at 146).

To establish ineffective assistance of counsel in violation of the Sixth Amendment, Flournoy must show that: (1) his attorney's performance "fell below an objective standard of reasonableness," informed by "prevailing professional norms" and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Both components of the test must be satisfied; "the lack of either is fatal." *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996). "To reflect the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight, [the Court's] review of an attorney's performance is highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014). To show his attorney's performance was below an objective standard of reasonableness, Flournoy must assert facts that show his attorney "amounted to incompetence." *Delatorre v. United States*, 847 D.3d 837, 845 (7th Cir. 2017).

Flournoy cannot establish ineffective assistance of counsel. First, he cannot show that his attorney's performance fell below an objective standard of reasonableness. While he cites to the Attorney Response to Notice of Waiver of Counsel as support that his appellate counsel was ineffective, this only shows that Counsel and the Court were aware of Flournoy's arguments. As discussed by his counsel in the Response, "[i]f Mr. Flournoy is forced to accept the appointment of counsel, he will be unable to present some arguments to the Court because counsel ultimately has the authority to choose the issues presented." (Dkt. 12-1 at 148). Given that the Seventh Circuit reviewed Flournoy's grievances with Patton at the time of his appeal and yet did not remove him, this indicates that Patton's performance was objectively reasonable. Finally, Flournoy does not argue, nor can he show, that but for his counsel's errors, the outcome would have been different. As discussed above, there was substantial evidence against Flournoy, and the outcome would have been no different had the evidence he argues was suppressed was presented. He most definitely cannot show that but for ineffective assistance of counsel the outcome would have been different, as he was sentenced for the same counts while representing himself *pro se* at the district court, which was later upheld by the Seventh Circuit. For these reasons, Flournoy's ineffective assistance claim is unsuccessful.

## C. Petitioner Cannot Show He Is Actually Innocent

Petitioner next argues he is entitled to habeas relief as he is actually innocent. Petitioner claims the government suppressed evidence used in the 2017 sentencing remand and the 2018 Rule 41(g) remand, which "clearly proves the government and its witnesses knew the facts attested to at trial were not true" and would be used to deny him a fair trial. *Id.* at 7. Flournoy also claims the evidence established that he acted alone, not as charged in the indictment but explanations were not given to the jury. *Id.* at 4. The actual innocence exception is merely a gateway through which a

court can consider a petitioner's otherwise barred claims on their merits and the Supreme Court has not recognized a petitioner's right to habeas relief predicated upon a stand-alone claim of actual innocence. *Lund v. United States*, 913 F.3d 665, 668 (7th Cir. 2019).

Flournoy seems to base his actual innocence claims on *Brady* and ineffective assistance violations. He is unable to avail himself of habeas relief under actual innocence grounds because neither of these underlying claims are barred. *Gladney v. Pollard*, 799 F.3d 889, 895 (7th Cir. 2015). Here, Flournoy's underlying ineffective assistance and *Brady* are not procedurally barred, although, as discussed, they are meritless. In any event, proving actual innocence is exceedingly narrow and Flournoy cannot meet this standard. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). However, as discussed above, Flournoy has made no showing that the evidence he claims was suppressed would have changed the outcome. He also cannot show a reasonable probability exists that the result of the proceeding would have been different without his counsel's alleged errors. Because standalone actual innocence grounds are unavailable for habeas relief and because Flournoy's underlying claims are not barred, Flournoy cannot establish relief under actual innocence.

## II. MOTION TO COMPEL, MOTION TO PRODUCE, MOTION TO DISQUALIFY, AND MOTION TO MOVE CAUSE

Flournoy next moves to compel disclosure of exculpatory evidence, (Dkt. 4), moves to produce and compel the existence of any wire communication, (Dkt. 5), and moves to disqualify the AUSA and to move the cause to the Eastern Division of the Northern District of Illinois, (Dkts. 7, 11.) For the reasons discussed below, all motions are denied.

### A. Flournoy Cannot Meet the Requirements of Rule 6

Flournoy moves to compel disclosure of exculpatory evidence and to produce and compel the existence of any wire communication. Under Rule 6 of the rules governing § 2255 cases provides that, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Fed. R. Sec. 2255 Cases 6(a). To meet the Rule 6 requirements, the defendant must: "(1) make a colorable claim showing that the underlying facts, if proven, constitute a constitutional violation; and (2) show 'good cause' for the discovery." *Tabb v. Christianson*, 855 F.3d 757, 764 (7th Cir. 2017). Good cause cannot exist where the facts alleged do not provide a basis for relief. *Hubanks v. Frank*, 392 F.3d 926, 933 (7th Cir. 2004) (citing *Matta–Ballesteros v. Henman*, 896 F.2d 255, 259 (7th Cir.1990)).

Flournoy cannot make out a colorable claim showing the underlying facts would constitute a constitutional violation if proven. Both his *Brady* and his ineffective assistance arguments are meritless and Flournoy is unable to bring a standalone actual innocence claim. Given this, Flournoy's motions to compel disclosure of exculpatory evidence and to produce and compel the existence of any wire communication are denied.

### B.     Flournoy Cannot Establish Cause to Remove AUSA Paccagnini

Flournoy moves to remove AUSA Paccagnini and to move the cause to the Eastern District of the Northern District of Illinois. (Dkts. 7, 11). As an initial matter, this case is already being heard in the Eastern District of the Northern District of Illinois so this motion is moot. Flournoy then argues that that AUSA Paccagnini should be disqualified as there is a conflict of interest and that he has filed a document that is false and misleading. (Dkt. 7 at 1, Dkt. 11 at 1-2). Flournoy appears to be arguing that since AUSA Paccagnini played a role in his underlying trial, he is conflicted out of his habeas petition. Flournoy also alleges that Paccagnini orally expressed a bias towards Flournoy during the trial. (Dkt. 7 at 1).

Motions for disqualification "should be viewed with extreme caution for they can be misused as techniques of harassment." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir.1982). Because of this, "disqualification is 'a drastic measure which courts should hesitate to impose except when absolutely necessary.'" *Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir.1993) (quoting *Schiessle v. Stephens*, 717 F.2d 417–19 (7th Cir.1983)). The moving party "bears a heavy burden of proving facts required for disqualification." *U.S. v. Palivos*, 2010 WL 3190714, *1 (N.D. Ill. Aug. 12, 2012) (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 794 (2d Cir.1983)). The burden is on the moving party to show facts necessitating disqualification. *Lanigan v. Resolution Trust Corp.*, 1992 WL 350688, at *1 (N.D. Ill. Nov. 23, 1992). The Court finds few cases where a motion to disqualify an AUSA was made during a § 2255 petition. However, in *U.S. v. Palivos*, where the petitioner made such a motion, the Court reviewed the record in comparison with Palivos's allegations to determine if disqualification was appropriate. Here, it is clear that Flournoy's motion is without merit. He does not state what the knowingly false document at issue is, and the Court cannot find any such false document. Additionally, Flournoy does not show any facts to indicate AUSA Paccagnini was biased and does not even indicate the contents of the "oral expression of bias towards Flournoy" he raises. (Dkt. 7 at 1). The statement that "it is common practice to use the State of Illinois Officers to make arrest" that Flournoy alleges gives rise to grounds for disqualifying AUSA Paccagnini does not show any sort of impropriety. Additionally, nothing in the AUSA's response to Flournoy's § 2255 petition was inappropriate as Flournoy suggests. (Dkt. 11 at 2). Because Flournoy shows no

grounds to disqualify AUSA Paccagnini and only provides conclusory statements that AUSA Paccagnini is biased, his motion is denied.

## CONCLUSION

For the reasons explained above, Flournoy's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Dkt. 1] is denied. The Court further declines to certify any issues for appeal pursuant to 28 U.S.C. § 2255(c)(2). His Motion to Compel Disclosure of Exculpatory Evidence, [Dkt. 4], Motion to Produce and Compel the Existence of Any Wire Communication, [Dkt. 5], and Motion to Disqualify the AUSA and to Move the Cause to the Eastern Division of the Northern District of Illinois, [Dkts. 7, 11] are also denied.

_____
Virginia M. Kendall
United States District Judge

Date: April 16, 2020